## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Kerry Witherspoon, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this Affidavit in support of an application for a search warrant for information associated with a cellular telephone assigned call number 520-596-4520 ("Target Telephone"), which is stored at premises controlled by T-Mobile USA, Inc ("the Service Provider"), a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, NJ 07054. The information to be searched is described in the following paragraphs and in Attachment A. This Affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Service Provider to disclose to the government copies of the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since July 2022. I am currently assigned to a violent crime and major offense squad at the Tucson Resident Agency in Tucson, AZ, where I investigate violent crimes and major offenses. During the time I have been employed as a Special Agent, I have received training in conducting bank robbery, fugitive, drug and cyber-crime investigations.

3. The facts in this Affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on the facts set forth in this Affidavit, there is probable cause to believe that violations of Title 18, United States Code § 922(x)(2) Prohibited Possession of a Firearm, § 1959(a)(6), Violent Crime in Aid of Racketeering- Aggravated Assault, and § 2119, Carjacking, have been committed, are being committed, and will be committed by

targets of the investigation. There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

## PROBABLE CAUSE

5. On March 5th, 2023, at approximately 5:23AM, the Tohono O'odham Nation Police Department (TOPD) and the Tucson Police Department (TPD) were notified of a carjacking that occurred on the Tohono O'odham Nation Indian Reservation near West Sikolk Wog and San Xavier Road, on the Tohono O'odham Nation. The victim, J.S., had walked to the QuikTrip gas station on Valencia Road and Interstate 19 where he called 911. J.S. spoke with the TOPD and was later interviewed by agents from the FBI.

6. J.S. was working as an Uber driver and received a request for a ride on the Target Telephone, from a female near the area of West Sikolk Wog and West San Xavier Road. J.S. was driving a Jeep Cherokee. He turned right onto a dirt road from San Xavier Road toward Interstate 19 from the area of the Casino. Law enforcement knows this area to be consistent with West Sikolk Wog. J.S. arrived at an orange brick house, which had a fence in front of it, however there was no gate. J.S. pulled up to the house and 3 males came out of the house. J.S. thought that the 3 males were between 20 to 30 years old. Initially the males were nice, however within a few seconds, the males began yelling and cursing. One of the males stood at the hood of his car so that he could not leave, and one male went to the front passenger side door, and one male went to his driver's side door. The male who went to the passenger side door had a gun which J.S. described as an "Uzi". The male who was on the driver's side opened his door and told him to get out and go to the back of the car. When J.S. got to the back of his jeep, the male with the gun came around the back of the car and the male started pulling the trigger on the gun and J.S. heard the gun go click. The male was trying to manipulate the gun. J.S. heard the gun click approximately 10 times, however it did not go off. The gun was pointed right at J.S. when the male pulled the trigger. The male with the gun got upset that it would not go off and hit

2

J.S. in the chest with the gun several times. The male with the gun yelled at a dog to attack J.S., however the dog would not attack. J.S. took off running and ran to the QuikTrip gas station on Valencia Road and Interstate 19 and had the gas station cashier call 911. J.S. guessed it took him approximately 3 hours to run to the gas station. J.S. stated that his adrenaline was pumping, and he thought he was going to die. Law enforcement responded to the gas station very quickly. J.S. had an Apple iPhone 12 (the Target Telephone) and a Samsung cellular telephone inside of the vehicle that was taken. J.S. still had the key fob to the vehicle on his person, which was not taken.

7. On March 5th, 2023, at approximately 5:26AM, the Marana Police Department (MPD) was notified of a carjacking that had occurred at the Circle K gas station located at 13961 North Sandario Road in Marana, Arizona. MPD responded to the scene and spoke with P.G. who stated that she had parked in front of Circle K and exited her car. P.G. observed two males walk up to her, one of the males approached her and the other male walked toward the passenger side of the car. P.G. described both males wearing black pants, black jackets, black beanies, and black shoes. The male who approached her, grabbed her, and said, "give me your keys lady". Initially P.G. refused, however the male removed a gun from his front right waistband area with his right hand. P.G. described the gun as being all black. The male had the gun pointed at her lower abdomen and legs. The male had his finger on the trigger. P.G. gave the male her keys and she ran into the store to call 911, as her phone and belongings were in the car.

8. MPD officers located the vehicle, which was a 2012 Toyota Camry, with Arizona Registration, on Interstate 10 near Avra Valley Road. MPD officers attempted to stop the vehicle, however it fled. MPD pursued the vehicle until it crashed near Interstate 10 and Miracle Mile. Christopher RODRIGUEZ and James MORENO fled from the vehicle on foot. RODRIUEZ and MORENO were eventually taken into custody by the MPD. MPD processed the Toyota Camry and located a 9mm firearm with serial #A043927 inside of the Toyota Camry. MPD also located a shark backpack that had been discarded

3

while RODRIGUEZ and MORENO were fleeing, and inside of the backpack a prescription pill bottle was located belonging to a Coa HERNANDEZ. Law enforcement knows HERNANDEZ to be an associate of MORENO and knows both HERNANDEZ and MORENO to be documented members of the Bilby Street Crips Criminal Street Gang.

9. The MPD located J.S.' Jeep Cherokee at 11907 West Grier Road in Marana, Arizona. The rear driver's side tire was flat, and the Jeep did not have any license plates. The FBI responded and located two screws laying on the ground by the rear of Jeep, which are consistent with the license plate screws. Law enforcement believe that the license plates were removed from the Jeep in the parking lot of 11907 West Grier Road. Law enforcement conducted a canvass of the area, however neither the license plates, nor the Samsung cellular telephone, nor the Target Telephone were located. Later, federal search warrant 23-08632 was served on 1040 Sikolk Wog, the residence where J.S.' Uber was ordered to and where the carjacking occurred, and the license plates were recovered at that residence. Other search warrants were also conducted related to this matter, and neither the Target Telephone, nor the Samsung cellular phone, were recovered at any location.

10. J.S. indicated the Service Provider would not provide him with information related to the location of the Target Telephone on the target dates, and that a legal request from law enforcement would have to be made to obtain such records.

11. Based on my training and experience, I know that the Service Provider can collect cell-site data about the Target Telephone. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular phones to which they provide service in their normal course of business in order to use this information for various business-related purposes.

12. Based on my training and experience, I know that the service provider also collects timing advance data. Timing advance data provides a calculation of the approximate distance of the cellular device from a cellular tower based on the measured time it takes for signals to travel between the device and the tower. This information

4

provides an approximate location range that is more precise than typical cell-site data. Additionally, the service provider may collect derivative location information from the timing advance measurements, providing an estimated location of the device. Timing advance data may also be referred to as per call measurement data, "Real Time Tool" (RTT) data, TrueCall data, Network Event Location System (NELOS), or Location Database of Record (LOCDBOR).

13. Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless telephone service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Telephone's user or users, and may assist in the identification of co-conspirators and/or victims.

/ / /

23-04291MB

## AUTHORIZATION REQUEST

14.    Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41.

15.    I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

_____
Special Agent Kerry Witherspoon
Federal Bureau of Investigation

Subscribed and sworn to telephonically on _____ April 13, _____, 20 23

_____
HONORABLE MARIA S. AGUILERA
UNITED STATES MAGISTRATE JUDGE

I hereby attest and certify on Apr 13, 2023
that the foregoing document is a full, true and correct
copy of the original file in my office and in my
legal custody.

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

BY    Lorraine Gamez    DEPUTY

6